IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDY M.,[1]

        Plaintiff,

        v.                                                  Case No. 6:20-cv-01529-JR

COMMISSIONER OF SOCIAL                       OPINION AND ORDER
SECURITY ADMINISTRATION,

        Defendant.

RUSSO, Magistrate Judge:

        Plaintiff Randy M. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits (SSDI) under Title II of the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

BACKGROUND

        Plaintiff, Randy M., protectively filed his application for SSDI benefits on 1/29/18. Tr. 145-46. After this application was denied, plaintiff requested a hearing before a Social Security administrative law judge (ALJ). On 1/23/20, a hearing was held where ALJ Mary Kay Rauenzahn considered plaintiff's testimony as well as testimony from medical and lay witnesses. Tr. 154. 3/4/20, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-25. Plaintiff timely requested review of the ALJ's decision, but by letter dated 7/7/20, the Appeals Council declined

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party in this case.

Page 1 – OPINION AND ORDER

to grant the request for review. Tr. 1-6. The ALJ's 3/4/20 decision then became the final order of the agency.

Born in August 1957, plaintiff alleges disability beginning 12/31/17 (Tr. 145), based on a combination of impairments, including chronic kidney disease (stage IV), hypertension, and chronic tophaceous gout. Plaintiff was 60 years old as of his alleged onset date and has a high school education.

At the hearing on 1/23/20, plaintiff reported fatigue and muscle weakness from his kidney disease. He testified he must rest after 1 to 2 hours of activity. Tr. 39. Plaintiff related that his fatigue affects his ability to concentrate, and he has a few hours each day when he can be active and alert. Tr. 40. Plaintiff was able to continue working at his most recent job, with accommodations and reduced hours, until he was fired. Tr. 41. He estimated he could stand for 10 minutes at a time and lift about 10 pounds. Tr. 42. Plaintiff also developed steroid myopathy from his kidney treatments. He testified he has ongoing swelling in his hands, has trouble grasping objects, and pays someone to do household tasks, such as mowing the lawn, since he is not able. Tr. 43. Plaintiff attends church twice a week for 90 minutes to 2 hours each time. Tr. 44. Plaintiff said he can focus well for a few hours in the morning and then is "done for the day." Tr. 45. He also testified that stress exacerbates his symptoms, and his ability to concentrate declines as he fatigues. Tr. 46.

The ALJ also considered a questionnaire plaintiff's wife completed describing plaintiff's limitations. She noted plaintiff has no energy or stamina and must rest after 1 to 2 hours of activity. Tr. 273. She stated that plaintiff cannot do any significant lifting or sustained pushing, and that he needs a nap after helping with simple tasks, like grocery shopping. Tr. 277. The witness checked lifting, squatting, bending, standing, walking, sitting, kneeling, hearing, stair climbing, memory,

completing tasks, concentration, understanding, following instructions, and using hands as abilities affected by plaintiff's conditions. She noted that his memory and concentration have worsened over the past several years. Tr. 278.

Plaintiff's long-time supervisor at his most recent job, Shiloh Spoo, also completed a statement in which he described plaintiff's declining ability to do his job beginning in early 2017. Spoo noted plaintiff reduced his hours to 20 per week or less towards the end of his time with the company, however he still missed workdays with declining attention to detail, focus, and ability to "keep track of things." Plaintiff appeared fatigued resulting in his supervisor providing accommodations by adjusting the flow of work, giving plaintiff less to do, fewer responsibilities, asking others to check his work, and allowing him additional time off. Eventually, however, plaintiff was terminated. Tr. 282.

Dr. Robert Pinnick treated plaintiff for hypertension and chronic kidney disease (stage IV) throughout the relevant period. Tr. 301. During his course of treatment Dr. Pinnick noted plaintiff's fatigue, muscle weakness, and mental fog, and at one point plaintiff was treated after he fell while walking and scraped his face. Tr. 319, 334, 340, 356. On 10/22/18, plaintiff was evaluated by Dr. Mike Henderson who noted plaintiff's chronic kidney disease, arthritis, and fatigue. Tr. 296. Dr. Henderson identified some possible Heberden's nodes in plaintiff's hands and noted the PIP joints appeared a bit enlarged. Tr. 297. Dr. Henderson did not assess any work-related limitations. Tr. 298. On 4/24/19, Dr. Pinnick noted that plaintiff had developed fatigue and joint pain after six-months of steroid treatment. Tr. 508-09. On 1/14/20, Dr. Pinnick again noted plaintiff was doing well except for his profound fatigue. Tr. 540. In a statement on 1/14/20, Dr. Pinnick opined that plaintiff's diagnoses included nephritis with advanced kidney disease and steroid myopathy, resulting in fatigue and weakness. Tr. 534. Dr. Pinnick further opined plaintiff could sit for 4 hours,

stand/walk for 2 hours, and must rest or recline for 4 hours in an 8-hour day. Plaintiff could lift up to 10 pounds occasionally. He could use his hands for reaching, handling, feeling, and fingering activity for 4 hours in an 8-hour day. Tr. 535-36. Dr. Pinnick opined plaintiff could function well for about 4 hours but then would need 1 to 2 hours of sleep to recover. He would be expected to be off task for 25 percent or more of a typical work day. Tr. 536. Dr. Pinnick opined plaintiff would likely be absent from work 5 or more days each month and opined plaintiff's fatigue would preclude him from performing work for more than 3 to 4 hours in a day. Tr. 537. Dr. Pinnick explained that plaintiff was treated with high dose steroids for 6 months to prevent end-stage kidney disease and developed severe steroid myopathy and fatigue as a result. These effects persisted even after the steroid treatment was stopped. Tr. 538.

      The ALJ called Mark Mann to testify as a vocational expert (VE) at the 1/23/20 hearing. The VE identified plaintiff's past relevant work as that of a combination job involving elements of auto glass worker (DOT # 865.684-010), manager of product development (DOT # 189.117-014), and systems analyst (DOT # 030.167-014), preceded by a separate job as a customer service representative (DOT # 249.362-026). Tr. 48-49. The ALJ asked the VE to consider an individual limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, able to stand and/or walk for 2 hours and sit for 6 or more hours in an 8-hour day, unable to climb ladders, ropes, or scaffolds, and able to occasionally climb ramps and stairs, stoop, kneel, crouch, balance, and crawl. Tr. 50. In response, the VE replied that the past work as a customer service representative would be suitable. Tr. 51. The VE testified that there would be transferable skills, including management in an office, being able to process information and materials in an office setting, customer service skills, and knowledge of computers and information systems. The VE testified that these skills would transfer to the occupations of receptionist (DOT # 237.367-038). The VE

testified that working as a receptionist would require very little if any vocational adjustment from plaintiff's past work. Tr. 52-53. The VE testified that no more than 10 percent of the work day off task and no more than 1 absence per month would be acceptable for competitive employment. Tr. 54.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (citations omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. § 416.920). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."

*Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i), (b).

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii), (c).

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41 (citing 20 C.F.R. § 416.920(d)). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv), (f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141-42 (citing 20 C.F.R. § 416.920(e)).

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff engaged in substantial gainful activity (SGA) in May, August, and October 2018 and in May 2019, but continued the sequential analysis to address the periods during which plaintiff was not engaged

in SGA. Tr. 15-16. At step two, the ALJ found plaintiff has chronic kidney disease; hypertension; and chronic tophaceous gout, and that those impairments are severe. *Id.* At step three, the ALJ found plaintiff's impairments do not meet or equal any listed impairments. *Id*. The ALJ further found that plaintiff has the residual functional capacity to perform:

> Light work, as defined in 20 CFR 404.1567(b). He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for approximately 2 hours and sit for 6 or more hours in an 8-hour workday with normal breaks. He cannot climb ladders, ropes, and scaffold, and he can occasionally climb stairs and ramps. He can occasionally balance, stoop, kneel, crouch, and crawl.

*Id.* at 17. At step four, the ALJ found the claimant could return to his past relevant work as a customer service order clerk (DOT # 249.362-026). Tr. 22-23. The ALJ also found plaintiff had transferable skills from his past relevant work as a customer service order clerk, including office management, processing information and material in an office setting, customer service skills, and knowledge of computers and information systems. At step five, the ALJ found that these skills would transfer to the occupation of receptionist (DOT # 237.367-038), (Tr. 24.), and that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred because she: (1) discounted plaintiff's subjective complaints without substantial evidence; (2) failed to give sufficient reasons to discount the lay witness statements of Shiloh Spoo and plaintiff's wife; (3) improperly gave Dr. Pinnick's opinion little weight; (4) incorrectly found plaintiff's self-employment was SGA; and (5) the step-four and step-five findings were not supported by substantial evidence. *See* ECF 12.

I.  **Plaintiff's and Lay Witness's Testimony**

1.  *Plaintiff's Subjective Complaints*

Plaintiff first contends the ALJ erred by discounting plaintiff's subjective complaints about his symptoms and disability. When assessing the reliability of a claimant's allegations, an ALJ considers the extent to which those allegations are consistent with the evidence in the record. 20 C.F.R. § 404.1529(c). When substantial evidence supports the ALJ's assessment of a claimant's subjective complaints, the reviewing court must uphold the ALJ's conclusions even if the evidence is susceptible to more than one rational interpretation. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Put another way, this Court has to affirm when the ALJ provides clear and convincing reasons for her findings. *Id.* The ALJ provided as much, so the Court will uphold the ALJ's decision to discount plaintiff's complaints.

Plaintiff primarily asserts the ALJ erred because she "singled out 'a few periods of temporary well-being from a sustained period of impairment'" to discredit plaintiff's testimony, in particular regarding his fatigue. ECF 12 at 12-13 (citing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014)). Plaintiff appears to concede there is some objective evidence supporting the ALJ's findings, but that the ALJ missed the real issue: "whether Plaintiff can *sustain* activity for a full work day and work week." *Id.* at 13 (emphasis in original). The objective evidence, however, provides support for the ALJ's interpretation (even if it is not the only possible interpretation of the evidence), so this Court must uphold her decision.

As defendant points out, the examination findings and work history from the relevant period both support the ALJ's decision to discredit plaintiff's subjective testimony. Contrary to his testimony, plaintiff had no objective findings of weakness, impaired mental functioning, joint deformity, or impaired stamina. Despite a report of fatigue and joint pain in early 2018, his

*examinations* at this time lacked any evidence of fatigue, joint impairment, or weakness. Tr. 20, 457-58, 464-65. Rather, his exams showed alert mental status, normal coordination, and normal mood and affect, in addition longstanding edema and fine tremor. Tr. 457-58, 464-65. Even when plaintiff's edema returned in January, 2020, there was no finding of fatigue. Tr. 20-21, 543-54. Because the objective evidence of plaintiff's treatment records from the relevant period do not bear out his testimony, this was an adequate basis and substantial evidence for the ALJ to rely upon to discredit his subjective testimony.

Plaintiff's employment history from the relevant period was another adequate reason for the ALJ to discredit plaintiff's say-so. An ALJ may discount a claimant's subjective complaints if the record shows effective treatment. 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). In particular, the ALJ focused on the fact that the "worst year" of plaintiff's symptoms was 2017, when plaintiff was gainfully employed. Tr. 45. During subsequent treatment, he reported feeling well and staying active. Tr. 20, 470 ("feels much better"), 483 ("feels well now"), 489 ("stronger and doing more"), 510 ("doing lots [and] more active"), 517 ("generally feels good, does do walking, [and is] starting his own business for glass restoration"). Except for immediately after his Prednisone taper (Tr. 457), Plaintiff did not subsequently complain of fatigue to a treatment provider other than in January 2020 (Tr. 540); and even then, he said he was "ok" (Tr. 20, 540). Because substantial evidence supports the ALJ's decision that plaintiff's wellbeing and effective symptom management were typical for the relevant period, this also provides an adequate basis for the ALJ to have discredited plaintiff's subjective testimony of symptoms.

And finally, the ALJ found plaintiff's part-time employment after his alleged onset date to be inconsistent with his testimony. Tr. 19, 21. An ALJ may discount a claimant's subjective

Page 9 – OPINION AND ORDER

complaints when they are inconsistent with his activity level. 20 C.F.R. § 404.1529(c)(3)(i); *Morgan*, 169 F.3d at 600. "An ALJ may consider any work activity, including part-time work in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (citation omitted). Plaintiff testified he could only stand for ten minutes or lift ten pounds. Tr. 18, 42. He said his only household chores consisted of making himself simple meals. Tr. 43. However, he worked after his alleged onset date as a self-employed automobile glass repairer and as an information technology (IT) consultant for his former employer, GlasWeld. Tr. 19, 35- 36, 183-203. Vocational expert testimony established that plaintiff performed his self-employed glass repair work at a light exertional level (Tr. 55-56), just as he had in a composite job leading up to his alleged onset date (Tr. 23, 37-38, 48-49). He also performed his IT consultant work at gainful levels at multiple points after his alleged onset of disability. Tr. 15-16, 21, 188-89. The ALJ reasonably concluded that plaintiff's work activity contradicted his alleged degree of impairment and that it supported his ability to work with light exertional levels of lifting and sedentary levels of standing and walking, contrary to plaintiff's testimony. Tr. 17, 19, 21.

Therefore, because the ALJ appropriately relied on these three sufficient bases, the Court finds the ALJ did not err by discounting plaintiff's subjective testimony.

*2. Shiloh Spoo's Testimony*

The ALJ considered the lay witness statements, including from Shiloh Spoo, Plaintiff's former employer at GlasWeld. Tr. 19, 282. The Ninth Circuit requires an ALJ to give only germane reasons for discounting lay witness statements. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited

testimony of a claimant. *Joseph M. R. v. Comm'r of Soc. Sec.*, 2019 WL 4279027, at *11 (D. Or. Sept. 10, 2019)

The ALJ properly discounted Mr. Spoo's statement because it was specific to plaintiff's light exertional work activity in 2017, and, like plaintiff's testimony, failed to address plaintiff's ability to work in a more sedentary capacity. Tr. 19. A lay witness statement is not probative of disability if it does not establish an inability to work. *Mayes v. Massanari*, 276 F.3d 453, 461 (9th Cir. 2001). Mr. Spoo's statement was specific to plaintiff's performance of his composite job at GlasWeld, which included the duties of an automobile glass worker, a product development manager, and a systems analyst. Tr. 23, 37-38, 48-49, 282. He did not address plaintiff's work as an independently contracted IT consultant for GlasWeld in 2018 and 2019, or, crucially, plaintiff's prior role as customer service representative. Tr. 19, 183, 188-89, 282. The ALJ agreed that plaintiff could not continue working in the composite job he had with GlasWeld in 2017, but that he could perform jobs at a sedentary exertional level. Tr. 19, 22-23, 48-53. The ALJ therefore gave germane reasons why Mr. Spoo's statement was not probative of plaintiff's disability. Tr. 19.

   *3. Remaining Lay Witness Testimony*

As described above, if a lay witness's statements are similar to a claimant's properly rejected subjective complaints, the claimant cannot show harmful error in failing to reject the statement. *Molina*, 674 F.3d at 1122. Plaintiff's wife's statements were substantially similar to his own, especially those about needing to rest after just a couple hours, lifting weakness, impaired concentration and memory, and being unproductive at his job when he left in 2017. *Compare* Tr. 273-79, 282 *with* Tr. 39-47. Plaintiff provides no meaningful way to differentiate the lay witness statements from his own. ECF 12. Because the ALJ's reasons for rejecting plaintiff's statements

Page 11 – OPINION AND ORDER

apply with equal force to his wife's, the Court finds the ALJ did not harmfully err in discounting her statement without providing a germane reason to do so.

Ultimately, the ALJ's interpretation of plaintiff's and the lay witness's testimony is not the only reasonable interpretation of the evidence in the record. But, because the ALJ's decision is supported by substantial evidence, which provides adequate basis to discount plaintiff's and the lay witness's recounting of his symptoms, the Court must uphold the ALJ's determination, and finds the ALJ did not err in her weighing of this evidence.

## II.     Dr. Pinnick's Opinions

Because plaintiff filed his claim after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. Under the regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).2 The ALJ must articulate and explain the persuasiveness of an opinion or prior finding based on "supportability" and "consistency," the two most important factors in the evaluation. *Id.* at (a), (b)(1)-(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id.* at (c)(1)-(2).

The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements. *Id.* at (b)(2), (c)(3)-(5). *But see id.* at (b)(3) (where finding two or more opinions/findings about

same issue equally supported and consistent with the record, but not exactly the same, ALJ will articulate how other factors were considered). Where a single medical source provides multiple opinions or findings, the ALJ conducts a single analysis and need not articulate how each opinion or finding is considered individually. *Id.* at (b)(1).[2] "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ gave two reasons, both grounded in substantial evidence, that Dr. Pinnick's opinions deserved little weight. First, the ALJ found the opinions were internally inconsistent, and inconsistent with Dr. Pinnick's own treatment notes. Tr. 21. Second, the ALJ found Dr. Pinnick's opinions were inconsistent with the overall record evidence. Tr. 21-22. Because these reasons are sufficient, and this Court is not in a position to second-guess them, the ALJ's determination of Dr. Pinnick's opinions is upheld.

   1. *The ALJ Reasonably Discounted Dr. Pinnick's Opinion as Internally Inconsistent*

The first reason provided by the ALJ for giving Dr. Pinnick's opinion little weight is that the doctor's opinion is internally inconsistent and conflicts with the doctor's treatment notes. As the ALJ pointed out, Dr. Pinnick's assessments regarding plaintiff's periods of activity, reclining,

---

[2] The parties dispute whether the Court is obligated to prefer the treating physician's opinion over that of other doctors. Plaintiff, citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987), argues the ALJ must set forth "specific, legitimate reasons" based on substantial evidence to discount the opinion of a treating physician. The new regulations, 20 C.F.R. §§ 404.1520c(a), 416.920c(a), place no such obligation on the ALJ, and provide no hierarchy suggesting treating physicians' opinions must be given more weight. *See id.*

Because the Commissioner has authority to establish the guidelines for how an ALJ considers and articulates the consideration of medical opinions, and plaintiff makes no attempt to depict the new regulations as arbitrary and capricious or manifestly contrary to the relevant statutory provisions, the Court will analyze the ALJ's findings under the rubric of the post-March 27, 2017 regulations. The Court notes, however, that its findings would apply with equal force under the *Sprague* approach; that is, the ALJ's decision to discount Dr. Pinnick's opinion was supported by specific, legitimate reasons grounded in substantial evidence.

Page 13 – OPINION AND ORDER

and need for breaks were mathematically strained. Tr. 21, 534-36. Dr. Pinnick provided no objective support for any aspect of his opinion, nor did he otherwise explain how plaintiff could function for four-hour periods between breaks but also need over 20 hours of rest per workday. Tr. 21, 534-538. He asserted plaintiff's limits were based on fatigue and weakness (Tr. 534), but plaintiff's treatment records do not support such a finding. (Tr. 18, 300-38, 342-366, 370-380, 382-95, 455-91, 508-30, 540-45). The treatment records also lack subjective reports of weakness. Plaintiff reported fatigue to Dr. Pinnick on only two occasions during the relevant period. Once was in February 2018, shortly after completing a yearlong course of steroids (Tr. 20, 457), and the second time was when Dr. Pinnick completed his opinion in January 2020 (Tr. 20, 540). Including these two occasions, Dr. Pinnick's examinations of plaintiff were routinely normal except for longstanding fine tremor and edema. Tr. 20-22, 378, 386, 458, 464-65, 471, 483, 490, 511, 522, 529, 543-44. During the relevant period and despite those routine findings, plaintiff repeatedly told Dr. Pinnick that he was doing well and staying active in a manner that belied his subjective reports of disabling symptoms. Tr. 20-21, 20, 470 ("feels much better"), 483 ("feels well now"), 489 ("stronger and doing more"), 510 ("doing lots [and] more active"). Substantial evidence therefore supports the ALJ's conclusion that Dr. Pinnick's opinion lacked supportability.

> 2. *The ALJ Reasonably Discounted Dr. Pinnick's Opinion as Inconsistent with Record Evidence*

The ALJ also reasonably discounted Dr. Pinnick's opinion because it was inconsistent with other evidence in the record. Tr. 21-22. The persuasiveness of a medical opinion depends on its consistency with other evidence. 20 C.F.R. § 404.1520c(c)(2). Plaintiff's longitudinal medical records, and even his own testimony, reflected improvement during the relevant period when compared with his period of gainful employment. Tr. 19, 21-22, 46, 223, 378, 386, 458, 464-65, 470-71, 483, 489-90, 510-11, 517, 522, 529. To providers other than Dr. Pinnick, plaintiff reported

Page 14 – OPINION AND ORDER

doing well during the relevant period. Tr. 20-21, 517 ("generally feels good" and negative review for fatigue). Despite his longstanding impairments, plaintiff was self-employed during the relevant period in both automotive glass repair and IT consulting. Tr. 21-22, 35-36, 183-203. This employment reached gainful levels at times. Tr. 15-16, 188-89. The ALJ properly considered plaintiff's self-employment, in combination with his history of gainful employment with chronic impairments that subsequently improved, as evidence inconsistent with Dr. Pinnick's opinion. Tr. 21-22.

Plaintiff's counterarguments do not overcome the ALJ's reasoning. Dr. Pinnick's explanation of plaintiff's history of steroid use followed by fatigue (ECF No. 12 at 11; Tr. 538) conflicts with the ALJ's well-supported conclusions that plaintiff significantly improved after his steroid course (during gainful employment in a composite job) and could return to work at a sedentary level involving past work skills (Tr. 18-25). Plaintiff asserts that the ALJ considered his statements of doing well and being active to find he could sustain an eight-hour workday (ECF No. 12 at 11-12), however this misstates the ALJ's findings. Rather, the ALJ used plaintiff's statements to show how both his disability allegations and Dr. Pinnick's opinion are not consistent with the longitudinal treatment record (Tr. 20-21), as part of her duty to compare their reports with the overall evidence (20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2), 404.1529(c)). Plaintiff's reports of doing well and staying active indicate a lack of support for Dr. Pinnick's opinion. "Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ's reasons for discounting Dr. Pinnick's opinion were proper.

Because the ALJ gave specific and legitimate reasons, grounded in substantial evidence, for discounting Dr. Pinnick's opinion, this Court cannot choose plaintiff's interpretation of the

Page 15 – OPINION AND ORDER

evidence over the ALJ's, and therefore finds the ALJ did not err in giving Dr. Pinnick's opinion little weight.

### III. The ALJ's Step One Error Was Harmless

Plaintiff's next allegation of error—uncontested by defendant—is that the ALJ improperly found that plaintiff's self-employment income from May, August, and October 2018 and in May 2019 amounted to substantial gainful activity (SGA). Tr. 15-16. At step one of the sequential evaluation process, an ALJ must determine whether a claimant has engaged in substantial gainful activity (SGA) during his alleged period of disability. 20 C.F.R. § 404.1520(a)(4)(i). If so, he is not disabled for those periods of SGA. 20 C.F.R. § 404.1520(b). There is a presumption of SGA if a claimant earns over the amount specified in the agency's guidelines. 20 C.F.R. §§ 404.1574(b)(2). Part-time work may be considered SGA (20 C.F.R. § 404.1572(a)), and self-employment may be SGA, as well (20 C.F.R. §§ 404.1575). The ALJ found plaintiff's self-employment after his alleged onset date reached SGA in May 2018, August 2018, October 2018, and May 2019. Tr. 15-16. While this determination was partially erroneous, the error was harmless.

The error was harmless because the ALJ continued with the sequential evaluation process, regardless of the months when plaintiff was gainfully self-employed. Tr. 16. When an ALJ proceeds to the next step of the sequential evaluation process, any error at that step is harmless in the ALJ's ultimate nondisability finding. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). Plaintiff's step-one arguments therefore do not establish harmful error. ECF No. 12 at 8; *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). Because the ALJ continued past step one in the sequential evaluation, the Court finds any step one error was harmless.

### IV.    The ALJ's Step Four & Five Findings Were Supported by Substantial Evidence

Plaintiff's final allegation of error is that the ALJ's step four and five findings were not supported by substantial evidence, and should be overturned.[3] At step four in the sequential evaluation process, an ALJ determines whether a claimant can still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, at step five, the ALJ must then consider whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). To proceed past step four, the claimant carries the burden of showing two things: (1) he cannot do his past relevant work as he actually performed it, and (2) he cannot do it as generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2); *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016). At step four, the ALJ found that plaintiff could perform past relevant work as a Customer Service Order Clerk, as generally performed. Tr. 22-23.

Testimony from plaintiff and a vocational expert (VE) served as substantial evidence for the ALJ's step-four finding. A claimant's testimony about the duties of his past work is substantial evidence about the categorization of that work. *Stacy*, 825 F.3d at 570. A VE's testimony can also be substantial support for the conclusion that a claimant can return to past relevant work. *Tylitzki v. Shalala*, 999 F.2d 1411, 1415-16 (9th Cir. 1993). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss*

---

[3] Even if plaintiff is correct, and the ALJ's step four and five decisions are not based on substantial evidence, these arguments are waived. Plaintiff did not raise these "composite job" arguments before the agency, and presents them for the first time here. Because plaintiff did not raise the "composite job" issue, present any evidence, or challenge the vocational expert's testimony concerning his two separate jobs or transferability of skills at the administrative hearing, those arguments are forfeited. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2017); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

Although the Court considers the substance of plaintiff's objections to the ALJ's step four and five decisions out of an abundance of caution, the Court considers these arguments waived because they were not raised at the administrative hearing.

Page 17 – OPINION AND ORDER

*v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005). Plaintiff testified he worked in "customer service" for long-time employer GlasWeld (Tr. 38), for about ten years "prior" to working as a technical services manager for GlasWeld (Tr. 39). Tr. 22. He specified that his customer service duties including talking to customers and taking their orders, as well as helping them over the phone with windshield repair issues. Tr. 38. The ALJ relied on this direct evidence of a separate job in making his step four finding, and the VE's testimony that a person with plaintiff's residual functional capacity could perform work as a Customer Service Order Clerk as it is generally performed. Tr. 50-51. Substantial evidence therefore supports the ALJ's step-four findings. Tr. 22-23.

Plaintiff asserts that his customer service work should have been included as part of his composite technical manager job because he never performed customer service work separate from his other work with GlasWeld. ECF No. 12 at 16-17 (citing *Valencia v. Heckler*, 751 F.2d 1082, 1087 (9th Cir. 1985) and *Vertigan v. Halter*, 260 F.3d 1044, 1051-52 (9th Cir. 2001)). However, during his hearing, he repeatedly indicated that his formal employment with GlasWeld was split into two periods, one spent in a technical services role and one in a customer service role. Tr. 38-39, 42. The Ninth Circuit has distinguished situations where a claimant's period of primary engagement in a supervisory role meant that work was not a composite job in combination with other prior work as a manual laborer. *Stacy,* 825 F.3d at 569-70. *Stacy* distinguishes itself from *Valencia* and *Vertigan* because the claimants in those cases had only "occasionally" performed the contested job classifications. *Id*. at 570. But here, similar to *Stacy*, plaintiff's testimony indicated his work experience in customer service was not the least demanding aspect of a combined body of past work; in fact, it was from a period when it was the primary aspect of his work. Plaintiff has not met his burden of proving disability at step four.

Even if the ALJ erred at step four, it was harmless because the ALJ alternatively found at step five that plaintiff could perform other sedentary work using transferrable job skills. Tr. 23-24; *see Tommasetti*, 533 F.3d at 1042 ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five."). A person in plaintiff's age category can transfer to sedentary work that needs very little, in any, vocational adjustment. 20 C.F.R. § 404.1568(d)(4). Substantial VE testimony supports the step-five findings. The VE affirmed that a person with experience as a Customer Services Order Clerk would be able to transfer to the occupation of Receptionist with very little, if any, vocational adjustment. Tr. 52-53. The VE identified Plaintiff's transferable skills as customer service, knowledge of computers and IT systems, office management, and processing office information and materials. Tr. 52. Based on the VE's analysis of the receptionist occupation, it generally required telephone communication and transferring callers appropriately. Tr. 53. He testified that plaintiff's prior customer service work and the job of receptionist involved a similar degree of skills, based on his experience and job analysis. Tr. 52-53. The ALJ appropriately relied on the VE's testimony and DOT definitions of skills transferable to Receptionist (DOT 237.367-038, available at 1991 WL 672192) to conclude that a person with Plaintiff's residual functional capacity could perform a substantial number of sedentary jobs in the national economy using transferrable skills. Tr. 24, 52-53. Therefore, the ALJ did not err at step five, either.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 1st day of September, 2021.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge
